## Appeal of WATT & SHAND, INC.

Docket No. 748.    Submitted July 2, 1925.    Decided November 9, 1925.

The taxpayer alleges certain abnormalities affecting net income and invested capital for the years 1918 and 1919 which, it claims, entitle it to relief under section 328 of the Revenue Act of 1918. *Held*, that the evidence adduced does not prove such abnormalities in net income and capital as entitle it to such relief.

*Ferdinand Tannenbaum, Esq.*, for the taxpayer.
*J. Harry Byrne, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1918 and 1919 of $3,393.62 and

$14,050.85, respectively. The sole issue is whether the taxpayer is entitled to have its liability to profits tax for the years 1918 and 1919 computed under the provisions of section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer was incorporated March 2, 1915, under the laws of the Commonwealth of Pennsylvania, as the successor of a partnership composed of P. T. Watt and James Shand, which had been engaged in operating retail dry goods stores in the cities of Lancaster and Columbia, Pa., since 1878.

By bill of sale dated May 20, 1915, the partnership conveyed the following described property to the taxpayer:

| | |
|---|---:|
| Cash | $66, 702. 72 |
| Accounts receivable | 67, 461. 22 |
| Due from New York Reciprocal Underwriters | 4, 866. 15 |
| Merchandise inventory | 322, 407. 54 |
| Unexpired insurance | 2, 862. 66 |
| Overdrawn account of James Shand | 6, 077. 03 |
| Total | 470, 377. 32 |

In payment for the above personal property the taxpayer paid $62,743.05 in cash, assumed the outstanding liabilities of the partnership amounting to $7,134.27, and issued 4,000 shares of its capital stock, each share having a par value of $100.

The real property and other fixed assets employed in the business were retained by the partners and not conveyed to this taxpayer until a later date. The good will of the business was not specifically included in the personal property listed in the bill of sale.

The real property owned by the partnership consisted of land and a store building in the City of Lancaster, land and a store building in the City of Columbia, and several small properties which were occupied by employees of the partnership. These properties were acquired in 1880, 1897, 1903, 1906, and 1909.

Until 1909 the only books of account maintained by the partnership were the accounts receivable and accounts payable ledgers. The costs of the real properties acquired by the partnership, and the costs of improvements, if any, prior to 1909, were not recorded on any partnership book of account.

In 1909 a complete system of accounts for the partnership was installed by a firm of certified public accountants. At that time the accountants in collaboration with the members of the partnership determined as nearly as could be the costs of the real properties and other fixed assets employed in the business, and the amounts thereof were recorded in the books of account.

For the five-year period immediately preceding the organization of the taxpayer corporation the net income of its predecessor was as follows:

| | |
|---|---:|
| 1910 | $76,586.24 |
| 1911 | 100,836.14 |
| 1912 | 100,290.20 |
| 1913 | 87,212.97 |
| 1914 | 49,010.50 |

For the same period of time the capital employed in the business was as follows:

| | |
|---|---:|
| 1910 | $767,922.47 |
| 1911 | 788,611.97 |
| 1912 | 846,070.29 |
| 1913 | 867,669.46 |
| 1914 | 888,725.79 |

From 1915 until early in 1918, such real property and other fixed assets as were used in taxpayer's business were owned by its stockholders, formerly members of the predecessor partnership.

On March 16, 1918, the real property and other fixed assets used in taxpayer's business were conveyed to the taxpayer by the stockholders for a consideration of $417,000, an amount equivalent to the value of those assets as carried on the partnership books of account. Of the whole consideration, $400,000 thereof was paid through the issuance to the vendors of 4,000 shares, par value $100 each, of taxpayer's capital stock; the remainder, or $17,000, was credited to the accounts of the vendor stockholders on the taxpayer's books. These assets were thereupon recorded in taxpayer's books of account at a value of $417,000.

Taxpayer's net sales, gross income, and net income for the years 1918 and 1919 were as follows:

| | 1918. | 1919. |
|---|---:|---:|
| Net sales | $1,452,346.22 | $1,833,676.30 |
| Gross income | 490,068.54 | 617,470.76 |
| Net income | 253,740.24 | 337,170.46 |

In ariving at the net income for the years 1918 and 1919, respectively, the taxpayer claimed deductions for depreciation in the amounts of $6,896.17 and $13,470.78. The amount deducted in 1918 was computed on the basis of 2 per cent of the book value in the case of buildings and 5 per cent of the book value in the case of the other depreciable assets. The amount deducted in 1919 was computed on the basis of 2 per cent for buildings, 10 per cent for fixtures, 25 per cent for delivery equipment, 20 per cent for office equipment, 10 per cent for cash carrier system, 4 per cent for safes, and 5 per cent for sprinkler system, book values being used in each case.

The taxpayer also claimed, and the Commissioner allowed, a deduction of only $30,000 from the gross income of each of the years 1918 and 1919 on account of compensation paid to four executive officers.

The Commissioner determined the invested capital for the years 1918 and 1919, respectively, to be $807,117.36 and $1,004,658.50. The assets acquired on March 16, 1918, are included in the invested capital as determined by the Commissioner at book values.

The taxpayer made application to the Commissioner to have its profits-tax liability for each of the years 1918 and 1919 determined under the provisions of section 328 of the Revenue Act of 1918, alleging certain abnormalities affecting its net income and invested capital. This application was denied and the taxes for each year were determined in accordance with section 301.

The profits-tax liability as determined by the Commissioner for the years 1918 and 1919 represents 48.69 per cent and 23.22 per cent, respectively, of the taxable net income of those years.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: The taxpayer's sole allegation of error is that the Commissioner erred in determining its profits-tax liability for the years 1918 and 1919 under the provisions of section 301 of the Revenue Act of 1918, whereas, in view of all the existing circumstances, such determination should have been made under the provisions of section 328.

As grounds in support of its allegation of error the taxpayer sets out in its petition the following alleged abnormalities affecting its net income and invested capital:

(a) That in each of the years 1918 and 1919 salaries paid to its officers were abnormally low as compared with those paid to officers by other concerns engaged in the same trade or business.

(b) That because of its form of organization and the manner in which it acquired certain real property and other fixed assets on March 16, 1918, it has been deprived of a depreciation allowance based upon true values and has been limited to such an allowance based on book values which are less than the true values.

(c) That it has a valuable good will which can not be included in invested capital.

(d) That tangible property conveyed to it at a value greatly in excess of its book value can not be included at its true value in its invested capital.

In addition to the foregoing the taxpayer sets forth that the cost to the previous owners of the real property and other fixed assets ac-

quired by it on March 16, 1918, is unknown; hence, its invested capital can not be satisfactorily determined.

After giving careful consideration to all the evidence before us, we are unable to find that the alleged abnormalities affecting net income and invested capital actually existed, or that the invested capital can not be satisfactorily determined, or that the invested capital as determined by the Commissioner is not correct.

The first alleged abnormality affecting net income is that the salaries paid to its executive officers, four in number, for 1918 and 1919, were considerably lower than those paid by representative concerns engaged in the same line of business. The only evidence before the Board bearing on this matter is that contained in the depositions on written interrogatories, addressed to the executive officers of four concerns engaged in the same line of business as the taxpayer. These depositions contain about all the essential matter which is necessary to determine whether the concerns, with respect to which the matter relates, are representative concerns with which a fair comparison could be made if the profits-tax liability of this taxpayer is to be determined by resort to the means afforded by section 328. They were submitted primarily for the purposes of such comparison.

For the purposes of comparison we set out below a tabulation showing the average net sales, average gross income, and average salaries paid to executive officers, with respect to the four concerns referred to in the depositions, as well as the same data with respect to the taxpayer:

| | Taxpayer. | Average of submitted comparatives. |
|---|---|---|
| **1918** | | |
| Net sales | $1,452,346.22 | $1,121,382.09 |
| Gross income | 490,068.54 | 429,570.49 |
| Salaries | 30,000.00 | 22,225.00 |
| **1919** | | |
| Net sales | 1,833,676.30 | 1,505,275.95 |
| Gross income | 617,470.76 | 602,727.67 |
| Salaries | 30,000.00 | 28,750.00 |

The above comparison does not sustain the taxpayer's contention that the net income of the two years has been abnormally affected by virtue of low salaries paid to its executive officers in comparison with the salaries paid by concerns which it has itself selected as being representative. Since we have before us no other evidence tending to show that normal salaries for the years under consideration were in excess of those actually paid by the taxpayer, we conclude that the taxpayer has failed to show any abnormality in this respect.

The second alleged abnormality affecting net income is apparently based upon a misapprehension on the part of the taxpayer as to the

scope and limitations of section 331 of the Revenue Act of 1918. The provisions of that section are purely a limitation with respect to invested capital and are in nowise applicable to asset values for purposes other than invested capital. A corporate taxpayer is entitled to a depreciation allowance, with respect to assets acquired subsequent to March 1, 1913, predicated upon the actual cost of those assets, or the fair value thereof, at the date the assets were acquired.

In the instant appeal the Commissioner has predicated the depreciation allowance made by him, with respect to the depreciable assets acquired by the taxpayer on March 16, 1918, upon the cost of those assets to the taxpayer, the Commissioner's measure of the cost being the actual consideration charged to the taxpayer. There is no evidence before us which satisfactorily demonstrates that the assets had any greater value at the date of acquisition than the cost thereof as determined by the Commissioner.

The taxpayer alleges that an abnormality exists affecting its invested capital because of the limitations of section 326 (a) (4) of the Revenue Act of 1918, applicable to intangibles. In other words, it claims that it acquired a valuable good will upon incorporation in 1915, for which it issued no stock and for which it has not received any benefit in the computation of invested capital.

We do not think that the evidence proves a cash value of the good will at the time that it was acquired in 1915. The average earnings of the partnership for the five-year period 1910 to 1914 were $82,787.21, and the average amount of capital employed in the business during the same period was $831,799.99. We are not informed whether the net earnings are computed after an allowance has been made for salaries of partners; but, even if this be the case, the return on capital employed in the business during the five-year period was less than 10 per cent per annum, and, in our opinion, the evidence offered as to the value of the good will acquired in 1915 is not sufficient to prove a cash value. We therefore are of the opinion that the contention of the taxpayer upon this point is not well founded.

The taxpayer alleges a second abnormality affecting invested capital in that, because of the limitations imposed by section 331 of the Revenue Act of 1918, it may not include in invested capital the actual value of the assets acquired by it on March 16, 1918, but that such value as may be included is limited to the cost of those assets to the previous owners.

The evidence does not show, however, that the assets paid in for shares of stock on March 16, 1918, were in excess of the value allowed as paid-in capital by the Commissioner, or in excess of the value at which the previous owners could have included them as invested capital.

The last ground that the taxpayer advances as a reason for the necessity of determining its profits tax for both years under the provisions of section 328 is that, since the costs to the previous owners of the assets which it acquired on March 16, 1918, are unknown, and since these assets may be included in invested capital only in an amount not exceeding such costs, its invested capital can not be satisfactorily determined.

During the course of the hearing but a single witness was placed on the stand. Counsel for taxpayer elicited the testimony that the costs of the properties referred to in the preceding paragraph were unknown. That testimony, as far as it goes, is, of course, entitled to consideration. But it is not conclusive, and we are not satisfied that those costs are not susceptible of ascertainment from various sources. Furthermore, the costs written upon the books of the partnership in 1909 were placed there after careful investigation and deliberation. They were so entered with the full knowledge and sanction of the members of the firm, and at a time when their minds could not have been influenced by any advantage to be gained in the way of reduced taxation by including appreciated values in their asset accounts. If the amounts so entered on the partnership books were not the actual costs, the taxpayer has not adduced any conclusive evidence to show that such is the fact.

We point out, further, that no evidence has been presented to us that the consideration paid by this taxpayer for the assets referred to above was greater than the maximum values which may be included in invested capital with respect to those same assets under the provisions of section 331 of the statute. In other words, the Commissioner has admitted that these assets may be included in taxpayer's invested capital under the provisions of section 326 at their actual cash value at the date of acquisition, to wit, $417,000, which amount is equivalent to the consideration paid therefor by the taxpayer. Taxpayer has failed to demonstrate that this value is greater than the maximum value which may be allowed under the limitation prescribed by section 331.

In view of all of the foregoing, we conclude that the taxpayer has failed to prove the material averments of its petition.

TRAMMELL dissenting.